[No. 1207.]

THE MONTROSE HARDWARE CO. v. THE MONTROSE INVESTMENT CO. ET AL.

1. CONTRACTS—VERBAL AGREEMENT TO MAKE A LOAN.

A verbal agreement to make a loan, in the absence of a stated consideration which would give a cause of action, would neither give to the person to whom the promise was made, nor to any one who might proceed upon the faith and strength of it, any cause of action in case the agreement was broken and the party refused to make the loan.

2. MORTGAGES—PRIORITY OF LIENS.

A mortgage lien will not be postponed in favor of a subsequent judgment lien, on the ground that the judgment was obtained for material and work furnished in making improvements on the mortgaged premises, on the faith and reliance of a verbal agreement made by the mortgagee to the mortgagor to loan him money to make and pay for such improvements.

*Error to the District Court of Gunnison County.*

Mr. THOS. C. BROWN, Mr. ALEXANDER GULLETT, and Mr. S. D. CRUMP, for plaintiff in error.

Messrs. GOUDY & TWICHELL, for defendants in error.

BISSELL, J., delivered the opinion of the court.

The Montrose Hardware Company filed a bill whereby it sought to postpone the lien of a trust deed executed by Matt

VOL. x—11

Arch and his wife to the lien of two judgments recovered by the hardware company and its assignors. The trust deed was given on the 31, day of October, 1892, to secure the promissory note of these parties for $4,145.26, bearing the same date and covering certain real property in Gunnison county. The validity and *bona fides* of neither are attacked otherwise than by the assertion of what is alleged to give the judgment creditors superior equities to those inuring to the investment company by virtue of their security. The complaint is voluminous, and we cannot undertake to state it either in terms or substance, except in so far as it may be essential to the opinion. Arch and his wife were the owners of the property and in the fall of 1892 commenced extensive improvements which involved a large amount of labor, the purchase of very considerable materials for the construction of a ditch intended to irrigate the land and a large acreage besides, the enclosure of the tract by a fence, and likewise the making of sundry and divers other surface improvements. Arch and his wife are alleged to have been without other property than that on which the improvements were made and whatever rights they might have in the ditch and the water rights resulting from its construction. The labor was performed and the materials furnished between August and November. On the 31, day of October, the Montrose Investment Company through its agent Bonney, made an agreement with Arch and his wife to loan them about $13,000 within a time named for the express purpose of furnishing funds to pay for the improvements which had already been made, and which were to be made in the future, and on that date loaned the Arches a little more than $4,000, and took a trust deed on the property and the ditch to secure the repayment of the money. What became of this money is not disclosed by the bill, nor is it anywhere averred or stated that this money was not devoted to the purpose for which it was loaned, to wit, the payment of the improvements as projected, carried out, and further prosecuted. The trust deed was put on record and thereby became so far as the record

shows, a first lien on the property. The hardware company and their assignors, whose interests are represented in the bill, filed no lien to secure payment for the supplies which they furnished, or the work which they did, and the bills not being paid, they subsequently brought suit against the Arches and obtained separate judgments, one for $1,216.07 in favor of the hardware company, and one for $1,465.57 in favor of Whaley, the plaintiff's assignor. What the total amount of the improvements was is not shown by the bill, nor is the total amount of the indebtedness which the Arches contracted for improvements set out. It is simply alleged that they failed to pay the entire sum for which they contracted, and that these two judgments were ultimately recovered against them for the sums due. These judgments were obtained in November, 1893, execution issued and returned *nulla bona*, and this bill was then filed.

· This statement renders it tolerably plain that the lien which the investment company acquired by the execution, delivery, and record of the trust deed, must be superior to the lien of the judgments which were rendered more than a year afterwards, unless there is some principle applicable to the facts which gives the subsequent judgment creditors superior equities which they may enforce by this suit. We are quite unable to see upon what principle the bill can be maintained. As respects the rights of the lien creditors, there can be no question as to the priority of the trust deed held by the investment company unless something is stated in the bill which deprives that lien of the priority resulting from its antecedent execution and record. The only thing in the bill is a general allegation which is as well summarized and stated generally as any other way, that when they made the contracts with the Arches to supply them with what was requisite to make the improvements and when the assignors did the work, the material was furnished and the work was done in reliance upon an agreement the investment company had theretofore made with the Arches to make a loan out of which the Arches might liquidate their

bills. The bill does not state that the investment company made any agreement with the laborers, or with the material men to pay the bills or to make the loan. Nor is it charged that there was any agreement whatever between the investment company and the parties represented by the plaintiff in this suit, with reference either to the making of the loan or the application of the money resulting therefrom, when the loan should be made, to the settlement of the accounts. It is simply averred generally that the investment company had made a verbal agreement with the Arches and that these parties had knowledge of it, and relied upon it when they did the work and supplied the materials. Manifestly, of itself this is not enough. A verbal agreement to make a loan in the absence of a stated consideration, which would give a cause of action, would neither give to the person to whom the promise was actually made nor to any one who might proceed upon the faith and strength of it, any cause of action in case the agreement was broken and the party refused to make the loan. *Gutheil v. Schmidt*, 44 Pac. Rep. 853.

Aside from this consideration, the agreement is not so stated that we are able to see there was a definite parol agreement made between the investment company and the Arches upon which either they or the party who brings this suit would have any right to rely. The amount which was to be loaned is not definitely stated, nor are the terms and time of the loan given, nor is it charged that the investment company agreed to see to the application of the money or entered into any contract which would give rise to a cause of action in favor of any one who might do work or furnish materials as against that corporation. If there had been a definite contract on the part of the investment company to loan the Arches a specific amount of money and the agreement had been made on sufficient consideration so that the Arches might maintain a suit for breach, it does not follow that parties who dealt with the Arches even with knowledge of the agreement, would have a right of action against the invest-

ment company for the breach or the failure to see to the application of the money. If the investment company had loaned enough to pay all bills which the Arches contracted in making improvements, or the sum provided for in the written agreement set up in the bill, and turned the money over to the Arches and taken a trust deed to secure it, no cause of action would have come to the plaintiff against the investment company if the Arches had devoted the money to other uses than the payment of their accounts. The investment company did not agree to attend to its distribution nor to see that it was applied to the payment of these bills, and when they loaned the money they had the right, as they would have had, if they had loaned the entire sum, to take security for the loan and the parties who dealt with the Arches, even with knowledge of it, would have had no right to enforce their debts against the security which the company might have taken for the money advanced. There is a total absence of an agreement on the part of the investment company which would raise a privity between them and these parties and give rise to a cause of action in case the Arches misapplied the funds. It is true, there is a general allegation in the complaint that these goods were furnished at the instance and request of the investment company, but it is not so charged as to exhibit a right of action against the investment company. The whole theory of a contract between the investment company and these creditors is entirely negatived by the other allegations in the complaint and we cannot take that isolated sentence as a statement of a cause of action against the investment company.

We have been referred to a good many authorities which have given subsequent lienors the right to enforce their liens as against prior recorded instruments. There is no question about this law. The only difficulty with this case is that facts warranting its application are not alleged. It is not a question between persons having liens as mechanics or material men and prior or subsequent trust deeds, because neither the plaintiff nor his assignors ever attempted to file

any liens against the property to enforce payment for their work and material. Had the hardware company and the laborers filed a lien on the property when the work was done or within the time fixed by the statute, and this trust deed had been given even though its purpose was to furnish funds to pay the bills, it might be the parties would have been entitled to relief. But in this case there was nothing in the agreement on which the plaintiff had a right to rely. The parties trusted the Arches, sold their material, and only brought suit more than a year after the money was loaned to secure which the trust deed was put on the property. Under these circumstances, we know of no principle on which the acquired priority of this lien can be postponed. We may likewise be permitted to suggest that the structure of the bill is inartificial in some particulars, and that it lacks averments which would be indispensable even to effectuate the end which the plaintiff seeks. Although it is averred that the improvements were made and the work done in reliance on the verbal promise of the investment company to make the loan, it likewise appears that this corporation did loan over $4,000 to the Arches for the express purpose contemplated by the parol arrangement. In so far then as related to this amount, the parol agreement was carried into effect and sufficient money advanced to the Arches to pay the claims on which the suit was predicated. How then it can be claimed the plaintiffs were prejudiced or injured by the failure of the investment company to loan the Arches $13,000 is not apparent. Enough was advanced to cover the claims for which the plaintiff sues and it is nowhere charged that other work was done and other improvements made which could in any event be chargeable against this fund, and the default, if any, would seem simply to result from the failure of the Arches to apply the $4,000 which they got on the 31, of October to the liquidation of those claims which are claimed to have a priority. When the bill lacks an averment charging that the investment company was bound to see to the application of the money, it lacks what would be indis-

pensable in order to affect the security executed to secure the advance which was made.

Taking the bill as a whole, we are unable to see that a case is laid which entitles the plaintiff to the relief prayed for, or to any other relief against the investment company. The judgment sustaining the demurrer to the complaint was right, and it will therefore be affirmed.

*Affirmed.*